## DAVID L. SWEATMAN, EXR., *v.* JAMES H. PARKER.

1. STATUTE OF FRAUDS—PROMISE TO PAY THE DEBT OF ANOTHER.—C. was indebted to P. in the sum of $1011.25. It was agreed between them and B. that C. should cause to be transferred to B. certain promissory notes amounting to $4000, in consideration of which B. promised to pay to P. the debt due him by C. The transfer was made, suit brought on the verbal promise, and B., exr., sets up the statute of fraud.

2. If the party to whom a consideration moves becomes personally liable for the payment of the debt of another person, though made at the same time, and upon the same consideration, it is a collateral undertaking to pay the debt of another. 1 Smith's Leading Cases, 381.

3. Where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties, it is an original undertaking, and not a case within the statute.

4. The statute does not apply, if the consideration springs out of any new transaction, or move to the party promising upon some fresh and substantive ground of personal concern to himself. In such case, there is no doubt that a good and valid promise may be made by parol, and it is independent of the statute.

5. The sort of promise which the statute means, and which must be reduced to writing, is a promise to answer for the *debt, default or miscarriage of another person, for which that other person himself continues liable,* and this is the test by which we are to determine whether it should be in writing.

6. Where the defendant has received a valuable consideration for the purpose of paying the debt of another, from either party, distinct from and independent of the original debt, and thereupon promised payment, it would be an original undertaking, and not necessary to be evidenced by writing, as in the case of being furnished with funds for the purpose of paying the debt.

7. WITNESS—COMPETENCY—To ESTABLISH CLAIM AGAINST ESTATE OF DECEASED PERSONS.—C., the original debtor, in the suit against the estate of B., who had promised to pay the debt, is a competent witness, and is not testifying to establish his claim against the estate of a deceased person, and does not fall within the provision of Sec. 758 Rev. Code 1871.

Error to the circuit court of Montgomery county. Hon. Jason Niles, Judge. .

Parker sued the plaintiff in error on an *assumpsit* of his testator, which is stated in the declaration as follows: That Cunningham was indebted to Parker in the sum of $1011.25, and Cunningham was the owner of four notes on one Holman, amounting to $4000, which notes, however, were payable to Loggins, and in consideration that Cunningham, through said Loggins, did then and there indorse and assign said notes to Brantly; he, said Brantly, promised to pay the said sum of $1011.25 to Parker, and that Parker afterward accepted the said promise.

To the declaration the defendant pleaded three special pleas and the general issue. A demurrer was filed to the special pleas, and sustained by the court, and defendant refused to plead over. A trial was had on the issues made by the general issue. The judgment was for the plaintiff for the amount sued for.

A motion for a new trial was made, and overruled by the court. Defendant excepted and sued out a writ of error, and assigns the following causes of error, to-wit:

1st. The court erred in sustaining the demurrer of the plaintiff to the special pleas of the defendant. Nos. 1, 2 and 3.

2d. The court erred in giving instructions asked by the plaintiff, and refusing those asked by the defendant.

3d. The court erred in allowing Cunningham to testify as a witness for the plaintiff.

*W. R. Barksdale*, for plaintiff in error.

The questions raised by the demurrer of the plaintiff below to the special pleas of the defendant, and that raised by refusing the instructions asked for the plaintiff and defendant respectively, are the same, and will be considered together.

The proposition of plaintiff in error is, that to bind Brantly to pay Cunningham's debt to Parker, the promise of Brantly must be in writing.

. The defendant in error replies, that, under the state of facts set forth in the declaration, it is not Cunningham's debt, but Brantley's debt.

Giving to the words of the statute their plain and obvious meaning, we had always supposed that the statute of frauds was designed to prescribe a mode, by which alone A. could make B.'s debt his (A.'s) debt; *i. e.*, by a promise in writing.

It seems, however, well settled that if A. has a debt on B., and B. on C., and all being together, it is agreed that C. shall pay to A. the debt which he (C.) owes B., and thereupon A. releases B. that C.'s promise to A. need not be in writing, and it is not within the statute of frauds. Olive v. Lewis, 45 Miss., 203; Sadler v. Hoover, 2 George, 260.

· The next proposition is, that to bind Brantly to pay Cunningham's debt to Parker, it is absolutely essential that on Brantly's *assumpsit* Parker shall release Cunningham. In other words, that if Cunningham still remains liable to Parker, the promise of Brantly must be in writing, no matter what the consideration of Brantly's *assumpsit*, and the case of Olive v. Lewis *supra* sustains this. Green v. Creswell, 10 A. & E., 453; 37 E. C. L. R., and Thomlinson v. Gill, 6 A. & E., 564; 33 E. C. L. R.

It was at one time thought that a verbal promise, even to answer for the debt of another for which that other remained liable, might be available if founded on an entirely new consideration conferring a distinct benefit upon the party making such promise. This idea is, however, refuted by Sergt. Williams in an elaborate note to the case of Forth v. Stanton, and the rule there laid down by him, and which has ever since been approved of, is, that the only test and criterion by which to determine whether the promise needs to be in writing, is the question whether it is or is not a promise to answer for a debt, default or miscar-

riage of another, *for which that other continues liable.* If it be so, it must be reduced to writing; nor can the consideration, in any case, be of importance, except in such cases as Goodwin v. Chase, 1 B. & A., 297; 20 E. C. L. R.; in which the consideration to the person giving the promise is something which extinguishes the original debtor's liability. Smith on Contracts, pp. 46, 47.

This is exactly the point which was presented by the special pleas of the defendant below, that Cunningham was not released on Brantly's promise to pay Parker, but that C. was still held, and the same point is again presented in the instructions asked by defendant and refused by the court on the trial, in opposition to the foregoing authorities.

Some New York cases were cited by the counsel for plaintiff in the court below, sustaining a view opposite to the foregoing authorities. But it is submitted that they can be of no force, as against the foregoing, one of which is a decision of this court, Olive v. Lewis, administrator, which will be adhered to. In that case it is distinctly laid down that if the promise be not absolute, but collateral or contingent to the debt of another, it is within the statute, and must be in writing. New York decisions on the statute are condemned by our court in Beaman v. Buck, 9 S. & M., 207; Box v. Stanford, 13 ib., 93; Hairston v. Jaudon, 42 Miss., 380.

No exceptions will be engrafted on the statute. Gothard v. Flynn, 25 Miss., 60; Skaggs v. Nelson, ib., 88; Skipwith v. Dodd, 24 Miss., 487.

We discuss, last, the error of the court below in admitting Cunningham as a witness. Cunningham had sued Sweatman, as executor of William F. Brantly, deceased, for the very notes, the transfer of which to Brantly was the consideration for his promise to pay the very debt sued for here by Parker. It would hardly be contended that Cunningham was a competent witness in the case in which he sues Sweatman as executor, and to allow him *pro tanto*, to establish his debt in the other case. Cunningham cannot testify to

establish his claim against Brantly's estate, and thus make it liable to him for the $4000 of notes transferred to Brantly in his life time, but he may establish that claim to the extent of $1000, in this case, by fixing a liability on Brantly's estate to pay his, Cunningham's, debt to Parker, thereby discharging himself from said debt. The case of Reinhart v. Evans, MSS. opinion, January Term, 1873, seems decisive of this point.

*Harris & George,* for defendant in error.

Cunningham was objected to as a witness for incompetency. Because he had a suit pending against the defendant as executor of Brantly, deceased, to recover the money due from W. F. Brantly, deceased, for and on account of the same notes transferred to Brantly, in consideration of which Brantly had promised to pay plaintiff's debt in this suit. The objection was overruled, and defendant excepted.

The force of this objection is not perceived. For the fact that the witness, now setting up a claim to the same fund, in another suit, would, if it had any influence at all, make him interested in defeating plaintiff's claim in this suit. But the objection is utterly without foundation, since the interest which disqualifies, is an interest in the result of the suit in which he is offered as a witness, or in the record as evidence in a suit in his own favor. And the objection was so palpably unfounded, that it was not even made. However the suit might result, it could not have the least influence, or be offered as evidence in his own suit. If the objection could be supposed to cover the incompetency raised by the statute, then it is equally unfounded. The statute prohibits a person " from testifying as a witness to establish *his own claim* of any amount for or against the estate of a deceased person." This is not Cunningham's claim, but it is Parker's.

The next and only remaining question is raised by the instructions given for plaintiff, and asked for by defendant, and refused.

The defendant's view was, that the promise made by Brant-
ly was collateral, unless Cunningham was released, or in other
words, that, unless the transaction was a strict delegation, the
promise of Brantly to pay Parker was in fact a promise to
pay Cunningham's debt, and therefore void, unless in writ-
ing.   This view of the law is believed to be entirely errone-
ous.  In Leonard v. Vredenburg, 8 J., R. p. 39 of case. Chan-
cellor Kent, then Chief Justice of New York, lays down the
rule thus : " But if the promise to pay the debt of another, be
procured on a new and distinct consideration, independent of
the debt, and one moving between the parties to the new
promise, it is not a case within the statute" of frauds. Citing
Williams v. Leper, 3 Burrows, R. 1886, to which the court is
also referred.

In Farley v. Cleaveland, 4 Con. 433, the authorities were
all reviewed and the same principle established.   That case
was this, Farley and Cleaveland declaring that one Moon was
indebted to plaintiff by promissory note for $100, and that if
it fell due, Cleaveland, in consideration of fifteen tons of hay,
sold by Moon to him, promised to pay the said notes of Moon
to Farley.

The court sustained the action, naming as a general
principle :  " In all cases founded on a new and original *con-
sideration*  of benefit to the defendant, or *harm to the
plaintiff*, (that is the creditor,) *moving to the party* making
the promise either from the plaintiff or the original debtor,
the subsisting liability of the original creditor is no objection
to the recovery."   See page 439 of that case.   This case was
afterwards affirmed by a unanimous court, in 9 Con. 639.
The supreme court of the U. S. in Emerson v. Slater, 22 How,
29–43, stated the principle as follows :  "Cases in which the
guaranty or promise is collateral to the principal contract,
but is made at the same time, and becomes an essential
ground of the credit given to the principal debtor, are in
general within the statute of frauds.   Other cases also arise
which are within the statute of frauds, when the collateral

agreement is subsequent to the execution of the debt, and was not the inducement to it, on the ground that the subsisting liability was the foundation of the promise on the part of the defendant, without any direct or separate consideration moving between the parties. But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some business or pecuniary purpose of his own, involving either a benefit to himself or a damage to the other contracting party, his promise is not within the statute, although it may be, in form, a promise to pay the debt of another, and although the *performance* of the promise may have the effect of extinguishing that liability." Citing Leonard v. Vredenburg, 8 John., 39; Farley v. Cleaveland, 4 Con. 432; Nelson v. Brynton, 3 Met. 400; Alger v. Scoville, 1 Gray, 391; Williams v. Lepor, 3 Burr. 1886; Castling v. Aubert, 2 East, R. 325; 2 Parsons on Contracts, 306.

The same doctrine is announced in Parsons, as above cited, and by Ch. J. Shaw, in Nelson v. Brynton, 3 Met. The last case was this : Plaintiff sued the son to recover two notes given by the father, for $20 each; plaintiff had attached the father's estate on the two notes, and the son, in consideration of a release of the attachment agreed to pay the notes. Ch. J. Shaw, after making an exhaustive examination of the case, held that the action could be maintained, and that the promise was not within the statute.

These authorities we regard as conclusive.

If it be argued that the evidence shows that the promise of Brantly was made to Cunningham, and not to Parker, and therefore that Parker cannot sue on it, in his name; we answer, 1st, that there is sufficient evidence to show, that the promise was made to Parker, and to sustain the verdict of the jury on that point; 2d, that, even if the promise was made to Cunningham alone, still Parker, for whose benefit it was made, can sue on it. See Schemerhorn v. Vanderheyden, 1 John., R. 139; Parker v. Bucklin, 2 Denis., R. 45.

PEYTON, C. J., delivered the opinion of the court:

William Cunningham was indebted to James H. Parker in the sum of $1011.25, and it was agreed between said Parker, Cunningham and William F. Brantly, that Cunningham should cause to be transferred to Brantley certain promissory notes, belonging to him, to the amount of $4000, and in consideration thereof the said Brantley promised to pay to said Parker the debt due him by said Cunningham, as aforesaid; and in pursuance of said agreement the said notes belonging to said Cunningham were transferred to said Brantly.

Upon this promise of Brantly to pay the debt of Cunningham, an action of *assumpsit* was brought in the circuit court of Montgomery county, against David L. Sweatman, as executor of the last will and testament of William F. Brantly, deceased, by James H. Parker, to recover the amount due him as aforesaid by said Cunningham.

To this action the defendant pleaded the general issue, *non assumpsit,* and three special pleas in bar, alleging, substantially, that the promise of his testator to pay the debt of Cunningham to the plaintiff was not in writing, as required by the statute of frauds, and is therefore void. To these special pleas the plaintiff interposed a demurrer, which was sustained by the court, and the defendant declining to answer over to the declaration, the cause was submitted to the jury upon the general issue, who found for the plaintiff and assessed his damages at $1011.25, whereupon a motion was made for a new trial, which was overruled by the court, and judgment rendered on the verdict. From this judgment the defendant brings the case here, by writ of error, and makes the following assignments of error:

1. That the court below erred in sustaining the plaintiff's demurrer to defendant's special pleas.

2. The court erred in giving instructions asked for the plaintiff, and in refusing those asked for defendant.

3. The court erred in allowing Cunningham to testify for the plaintiff.

The first and second assignments of error will be considered together, as they raise the important question, whether, under the facts of this case, the promise on which the action was founded, was an original promise or a *collateral promise?* The first is out of the statute; the latter is not, when it is to pay the debt of another, already contracted.

The fourth section of the English statute of frauds has generally been re-enacted in this country. And although it is difficult, perhaps impossible, to reconcile all the decisions on the construction of that section of the statute as to what is an original and what a collateral undertaking, the strong current of the authorities is, that if the party to whom the consideration moves becomes personally liable for the payment of the debt, the engagement of any other person, though made at the same time and upon the same consideration, is a collateral undertaking to pay the debt of another within the statute. 1 Smith's Leading cases, 381, American notes.

The principle laid down in the case of Leonard v. Vredenburgh, 8 John., 39, is this: Where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties, it is an original undertaking, and not a case within the statute. And Roberts on Frauds, 232, lays down the doctrine to be that the statute does not apply, if the consideration " springs out of any new transaction, or moves to the party promising upon some fresh and substantive grounds of personal concern to himself." In such case, there is no doubt that a good and valid promise may be made by parol, and it is independent of the statute.

That clause of the statute which relates to a promise " to answer for the debt, default or miscarriage of another person," covers all guaranties, and is of great importance in reference to them. The distinction between those which are collateral and those which are original has already been considered; and it is sufficient to say, in this connection,

that only when the promise is distinctly collateral, is it within this clause of the statute. Nor is it then material whether the promise is made before or after the delivery of the goods.

From the very definition of a collateral promise, it follows that there must be some one who owes the debt directly. There must exist an original liability. And one of these liabilities must be entirely distinct from the other. It has been repeatedly decided, that the sort of promise which the statute means, and which must be reduced to writing, is a promise to answer for the *debt, default or miscarriage of another person, for which that other person himself continues liable.* But it was at one time thought that a verbal promise, even to answer for the debt of another for which that other remained liable, might be available, if founded on an entirely new consideration conferring a distinct benefit upon the party making such promise. This idea is, however, confuted by Sergt. Williams in his elaborate note to the case of Forth v. Stanton, 1 Saunders, 211. The rule there laid down by him, which has ever since been approved of, is, that the only test and criterion by which to determine whether the promise needs to be in writing, is the question, whether it is or is not a promise to answer for a debt, default or miscarriage of another, for which that other continues liable. If it be so, it must be reduced into writing; nor can the consideration in any case be of importance except in cases in which the consideration to the person giving the promise is something which extinguishes the original debtor's liability. Smith on Contracts, 92, 5th ed.

But acting upon the general rule as stated by Roberts and Kent some of the American courts have held, that wherever there was a new consideration, distinct from that which supported the original debtor's liability, and moving between the parties to the guaranty, the defendant's promise was saved from the operation of the statute. However respectable the countenance it has received, this doctrine, if unqualified, must be repudiated as not based upon authority,

and as, to a great degree, nullifying the statute. And it may also be fairly said that the better opinion of courts and of commentators is now leaning against it. Mr. Browne, in his valuable Treatise on the Statute of Frauds, 217, upon a careful examination of all the cases upon the subject, has arrived at the conclusion that the proper limitation of the rule is this: That wherever the transaction between the parties is such that *the primary and distinctive obligation assumed by the defendant is different from that of a guarantor*, although as incidental to, and in course of, the discharge of that obligation, the debt of another is satisfied, the defendant's promise is not within the statute. In order to make the statute applicable, the immediate object for requiring the defendant's liability must be that he shall pay the debt of another, if that other does not, and thus there must appear a guaranty of the debt. Smith on contracts, 92.

The following cases, in which it was held that, where there was a new and original consideration, moving to the party making the promise, either from the plaintiff or the original debtor, the subsisting liability of the original debtor is no objection to the recovery, are cases falling within the rule as above laid down by Mr. Browne. Farley v. Cleaveland, 4 Cowen, 432; Olmstead v. Greenly, 18 John., 12, 17 John., 115, and Cleaveland v. Farley, 9 Cowen, 639, and Rogers v. Kneeland, 13 Wend., 122, and Henderson v. Langford, 3 Strobhart, 209, and Hall v. Rogers, 7 Humphrey, 536.

In the case of Kingsley v. Balcome, 4 Barbour, 131, it was held that the true rule to be extracted from the cases is that the new "original consideration" spoken of must be such as to shift the actual indebtedness to the new promisor, so as between him and the original debtor, he must be bound to pay the debt as his own, the latter standing to him in the relation of surety. The cases of Farley v. Cleaveland, 4 Cowen, 432, and Barker v. Bucklin, 2 Denis., 45, are examples of this kind.

Where the defendant has received a valuable consideration,

for the purpose of paying the debt of another, from either party, distinct from and independent of the original debt, and thereupon promised payment, it would be an original undertaking, and not necessarily to be evidenced by writing; as in the case of being furnished with funds for the purpose of paying the debt. Hilton v. Dinsmore, 21 Maine, 413, and Barker v. Bucklin, 2 Denis., 45.

The case of Barker v. Bucklin, last above cited, involved the question whether, where one person makes a promise to another for the benefit of a third person, that the third person can maintain an action upon it, though the consideration does not move from him. It was decided that he could, and that such an agreement is not a promise to answer for the debt of a third person, and therefore is not required to be in writing.

In some cases, in which the consideration did not pass directly from the plaintiff, and the promise was not made directly to him, it has been made a question how far he might avail himself of it, and bring an action in his own name, instead of the name of the party from whom the consideration moved, and to whom the promise was made. It seems to have been anciently held as a rule of law, though not universally so, that no stranger to the consideration of an agreement, could have an action on such agreement, although it were made expressly for his benefit. But it seems to be held in recent English cases, that, while the rule itself is not denied, it would generally be held inapplicable where the beneficiary has any concern whatever in the transaction. In this country, the right of a third party to bring an action on a promise made to another for his benefit, seems to be somewhat more positively asserted, and we think it would be safe to consider this a prevailing rule with us ; indeed it has been held that such promise is to be deemed made to the third party, if adopted by him, though he was not cognizant of it when made. 1 Parsons on Contracts, 466 to 468.

In the case at bar, the special pleas and the instructions asked by defendant and refused by the court, assume that the promise of the defendant's testator was within the statute of frauds and should therefore have been in writing. We think the transaction between the parties is such that the primary and distinctive obligation of defendant's testator is different from that of a guarantor, and although in the course of the discharge of that obligation, the debt of another may be satisfied, the promise of the defendant's testator on which this action is brought, is not within the statute ; and the instructions given for the plaintiff therefore propound the law correctly. These assignments of error are not well taken, and can not be sustained. The promise was made by Brantly to Cunningham for the benefit of Parker, who had an undoubted right to maintain an action upon it, and especially if adopted by him, or where he had, as in this case, a beneficial concern and interest in the transaction. Hilton v. Dinsmore, 21 Maine, 413, and Barker v. Bucklin, 2 Denis., 45, and 1 Parsons on Contracts, 455 to 468.

This brings us to the third and last assignment of error, which impeaches the action of the court in allowing Cunningham to testify on behalf of the plaintiff. Section 758 of the Code of 1871 provides that "no person shall testify as a witness to establish his own claim of any amount, for or against the estate of a deceased person, which originated during the life-time of such deceased person."

The witness was introduced not to establish his own claim against the estate of the deceased, but to establish his executor's liability to pay the claim of James H. Parker against the estate of said decedent; and although the witness may be incidently benefited by the result of the suit, yet his testimony is not for the purpose of establishing *his claim* against the estate of the deceased, and therefore does not fall within the terms or meaning of the statute. The case of Reinhardt v. Evans, relied upon by the plaintiff in error, has no application to this case ; there Evans was plaintiff in the

case, who was introduced to establish his claim against the estate of the deceased, who died subsequent to the institution of the suit, and since the death of the debtor; we may fairly infer from the record, that Evans transferred his claim to one Wright, for whose use the suit was continued to be prosecuted, the suit having been commenced by Evans for his own use; and, after the death of his debtor, been transferred to another person, were circumstances well calculated to create a suspicion of a disposition to evade the wise provision of the statute, intended to protect the estates of decedents against unfounded claims. The case under consideration has none of the elements of this case. The witness was not a party to the suit nor was his testimony sought to establish his claim against the estate of the deceased. In the construction of this statute we are not disposed to go beyond the doctrine of the case of Reinhardt v. Evans, 48 Miss., 230.

We can perceive no error in the rulings of the court below. The judgment must, therefore, be affirmed.