## Ford v. Byrd et al.

(Division A.   Nov. 14, 1938.   Suggestion of Error Overruled Dec. 12, 1938.)

[184 So. 443.   No. 33368.]

F. **Lee Evans**, of Atlanta, Ga., and **Dabney & Dabney**, of Vicksburg, for appellant.

R. M. Kelly and Brunini, Wright & Brunini; all of Vicksburg, for appellee.

Argued orally by **Fred Dabney**, for appellant, and by **R. M. Kelly** and **John Brunini**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

Mrs. Lizzie Meyer Wehmeyer died on August 10, 1936, leaving a will in which Leona Byrd was nominated as executrix, and Julius M. Buchanan as executor. On August 17, 1936, they applied for and received letters of administration, the petition therefor setting forth that her estate consisted in part of $9,000 in U. S. Bonds.

On March 27, 1937, Helen Meyer Ford filed a petition in the court below in this administration proceeding setting forth Mrs. Wehmeyer's will, and alleging in substance that: The petitioner is Mrs. Wehmeyer's sole heir at law; publication to creditors had been made by the executors, and the time for probating claims against the estate had expired without any claims being probated; and that no account had been filed by the executors. That the following bequests in the will are void:

"Eighth: I give, devise and bequeath to Leona Byrd the cash sum of $—— and the following bonds, located in my lock box No. 572 in the First National Bank & Trust Co., Vicksburg, Miss."

Box No. —— —— $ ——
Box No. —— —— $ ——
Box No. —— —— $ ——
Box No. —— —— $ ——

"Ninth: I give, devise and bequeath to my friend XXXXXXX —— the cash sum of $———, located in Box 572 in the First National Bank & Trust Co. Vicksburg, Miss."

The words "Julius Buch-" appear under the X's in Item 9. The prayer of the petition is:

"1st. That the said will of said testatrix be construed by the court, and that the court will decree that items Eight and Nine of said will to be absolutely null and void and so hold that the said Mrs. Helen Meyers Ford is the sole legal heir of said testatrix and as such is entitled to all of the estate of said testatrix not legally devised by said will.

"2nd. That summons be issued for said Leona Byrd and Julius M. Buchanan, Executors, to plead, answer or demur to this petition, answer under oath being hereby expressly waived, and to show cause why said accounting should not be had and said assets, the property of this petitioner, should not be forthwith delivered to her, your petitioner."

The two executors as such were made parties defendant to the petition, and service of process on them was had. On April 21, 1937, the executors filed their first annual account setting forth, among other things, an inventory of property of the estate that had come into their possession, including $9,000 in U. S. Bonds. Afterwards, an amended petition was filed by Mrs. Ford, to which Leona Byrd was made a party defendant, both as executrix and individually, and alleged that she, Leona Byrd, claimed an individual interest in the decedent's property. The prayer of this petition is practically the same as that in the original petition.

On September 3, 1937, the executors answered the original petition, denying that the bequests in Items 8 and

9 of the will were void, and alleging that: "the whole of said estate has been devised and bequeathed to respondent, Leona Byrd." On September 21, 1937, Leona Byrd, individually and in her own right, answered the amended petition, reaffirming the allegations of her answer to the original petition and alleging that the $9,000 of bonds had been given to her by Mrs. Wehmeyer prior to her death, and prayed that she be decreed to be the owner thereof. A motion by Mrs. Ford to strike from this answer the allegations as to the inter vivos gift of the bonds by Mrs. Wehmeyer to Leona Byrd was overruled. A motion was then made by Mrs. Ford that Leona Byrd be required to make her answer more specific. This motion was sustained. In response thereto, Miss Byrd amended her answer so as to allege that one-half of the bonds were given her by Mrs. Wehmeyer at one time and the other half at another, setting forth the place and as near as she could remember, the time of each gift. The issues presented by the pleadings are: (1) Are the two items of the will hereinbefore referred to as void; and (2) did Mrs. Wehmeyer before she died give the $9,000 of bonds to Leona Byrd.

On January 12, 1938, the appellee filed the following petition: "Comes the Complainant, Miss Leona Byrd, and moves this Honorable Court to permit her to correct the inventory filed by her and Julius M. Buchanan as Executors of said estate, so as to show that the bonds left by said decedent were not the property of said estate but belonged to her, and also to correct the First Annual Account rendered by the Executors so as to show that the bonds belonged to her and not to said estate.

"That the affidavits to the same were made through mistake, not knowing her rights in the premises, as will be shown by the testimony to be offered on the hearing of the petition of Mrs. Helen Meyer Ford for a construction of the will and the crossbill of movant."

Leave to so amend was granted but whether an amended inventory was thereafter filed does not appear.

After hearing considerable evidence, the court below rendered a decree: (1) "that Lizzie M. Wehmeyer, Deceased, during her lifetime made a valid, legal gift of the Nine Thousand ($9,000.00) Dollars worth of bonds in the lock box in the First National Bank & Trust Company of Vicksburg, Mississippi, and further finding as a fact that the cross-complainant Leona Byrd erroneously listed said bonds in the inventory of the estate of Lizzie M. Wehmeyer, Deceased, . . ."; (2) that the bonds in controversy, specifically designating them, be awarded to Leona Byrd, but to remain as they then were in the possession of the Clerk of the Court "Until determination of this said cause."

Among the appellant's complaints are: (1) The request of the appellee and her co-executor for permission to amend the inventory of Mrs. Wehmeyer's estate filed by them by striking therefrom all reference to the bonds here in question should have been overruled. (2) The motion of the appellant to strike from the appellee's answer to the appellant's petition all reference therein to her claim that the bonds in question were given her by Mrs. Wehmeyer during her lifetime should have been sustained. (3) The decree should have construed the will and adjudicated that Items 8 and 9 thereof are void. (4) The decree is contrary to the law and the evidence. (5) Evidence offered by the appellant was erroneously excluded. As to the first two of these complaints, it will be sufficient to say that we are of the opinion that no error is presented thereby.

The court having adjudicated that the appellee received a valid inter vivos gift of the bonds, it became unnecessary to construe the will, and in addition, the appellee abandoned any claims to the bonds under the will.

The appellee claims the bonds under two separate and distinct gifts from Mrs. Wehmeyer each for one-half of the bonds. As to the first of these, we have arrived at the conclusion that the Chancellor was probably right

in holding that the gift had been made; at all events we cannot say, on the evidence, that he was manifestly wrong. As to the second, we find no evidence sufficient to support the appellee's claim that the gift was made. Each alleged gift will be considered separately.

As to the first alleged gift, Henry Wehmeyer died, his only heir being his mother, Lizzie Meyer Wehmeyer, having in a safety deposit box at the First National Bank in Vicksburg eight $1,000 and two $500 bonds which he had purchased and paid for, whether with his own money, or that of his mother, as claimed by the appellant, is of no consequence, as will hereinafter appear. The witness Buchanan testified in substance as follows: Shortly before his death, Henry requested his mother, in the presence of the appellee, his fiancée, and the witness to give the appellee $1,000 of the proceeds of an insurance policy on his life and one-half of his bonds; and requested the appellee to live with and care for his mother. Both the appellee and Mrs. Wehmeyer promised to comply with these requests. The appellee carried out her promise and was living with Mrs. Wehmeyer when she died. In September, 1933, shortly after Henry's death, the witness went with Mrs. Wehmeyer and Leona to the First National Bank to cash a check for $5,000 to Mrs. Wehmeyer from the insurance company in settlement of Henry's life insurance policy. Immediately after Mrs. Wehmeyer received the money on the check, the witness accompanied her and the appellee to the vault of the bank and obtained from the attendant in charge a locked safety deposit box, to which Mrs. Wehmeyer had the key. They then entered a booth, provided by the bank for use of its custombers, and opened the box. Mrs. Wehmeyer then gave the appellee $1,000 of the insurance money, and placed the remainder in the box. Mrs. Wehmeyer then took from the box a package of bonds, saying "Leona, half of these bonds are yours." She then made two packages of the bonds, placed a rubber band around each package and delivered one of the

packages to the appellee, saying "It was one-half of Henry's bonds." The appellee then said, "Miss Lizzie, I don't want to take my bonds up to the house, can't they remain in your box," to which Mrs. Wehmeyer replied, "Yes, they will be safe in here." The appellee then put her package of bonds back in the box, as did Mrs. Wehmeyer with the other. The box was then locked and put back in the bank vault. Sometime afterwards, Mrs. Wehmeyer gave the bank written authority to permit the appellee to have access to and open the box. This seems to have been done for Mrs. Wehmeyer's and not the appellee's convenience. Declarations of Mrs. Wehmeyer to the effect that she had given her bonds to the appellee were introduced in the evidence. After Mrs. Wehmeyer's death, the box was opened by her executors, and all of the bonds—eight $1,000 and two $500 bonds—were found therein with a rubber band around them, and were back together. For the appellant, there was evidence of declarations by Henry Wehmeyer before and after the time testified to by Buchanan that what he wanted the appellee to have was $1,000 in cash and his diamond ring. Also of declarations by Mrs. Wehmeyer after the time Buchanan says she gave the bonds to the appellee to the effect that what she intended to and did give the appellee was $1,000 in cash and Henry's diamond ring. The reports of the executors, to the court, hereinbefore referred to, were also in evidence; as was also a will of the appellee made on June 11, 1936, wherein $5 to each of four sisters and her jewelry and $1,000 in cash to Mrs. Wehmeyer and the remainder of her estate "consisting of real and personal property" to her mother Bertie Lee Byrd.

These declarations of Henry Wehmeyer and his mother, and the conduct of the appellee, are of value only as casting doubt on the evidence of the witness Buchanan. Nevertheless, the Chancellor had the right to and did believe him, and it can not be said that he was manifestly wrong in so doing.

When Mrs. Wehmeyer delivered these bonds to the appellee, she lost all dominion and control thereover, and the gift was complete. That the appellee then, with Mrs. Wehmeyer's consent, placed the bonds back in Mrs. Wehmeyer's lock-box, and thereafter did not remove them, does not render the executed gift to her invalid. 28 C. J. 642. The evidence does not disclose what particular bonds were given to the appellee, and when the box in which they were kept was opened after Mrs. Wehmeyer's death, they were not separated into two packages, so that it can not now be determined what particular bonds were given her. Nevertheless, under Buchanan's testimony, which the court accepted, some of them belonged to her; so that on the return of the case to the court below a method should be devised for dividing the bonds, in kind if possible, but not by another method.

As to the second alleged gift of bonds, the record presents no evidence that these bonds were ever delivered by Mrs. Wehmeyer to the appellee. All that appears as to this alleged gift is that in December, 1935, according to the witness Juanita Acuff, Mrs. Wehmeyer and the appellee were together in the bank (evidently the bank hereinbefore mentioned), and Mrs. Wehmeyer said to the witness: "Mrs. Acuff, you wait in the lobby of the bank until we go down stairs, because I am going down and give Leona all of my bonds —." Mrs. Wehmeyer and the appellee then went down stairs where the bank's safety deposit vault was. They returned in about an hour and Mrs. Wehmeyer then said to the witness, "Juanita I have given Leona all my bonds." Other declarations of Mrs. Wehmeyer to the effect that she had, and others to the effect that she had not, given her bonds to the appellee were also in evidence. These declarations of the donor that she intended to give and had given the bonds to the appellee not being accompanied by any act showing a delivery thereof and a parting with possession and control thereover are insufficient to disclose a gift thereof to the appellee. Wheatley v. Abbott, 32

Miss. 343; Carradine v. Collins, 7 Smedes & M. 428; 28 C. J. 681.

J. C. Ford, the husband of the appellant, testified for her that he was present when, after Mrs. Wehmeyer's death, her safety deposit box at the First National Bank was opened by the executors; and that Mr. Kelly, an attorney representing the executors, the witness Buchanan, the appellee and the appellant were also present. In testifying as to what then occurred, he said the box was opened, and among other things, Mrs. Wehmeyer's will and all of these bonds were found therein, that Kelly read the will aloud, and then referred to the items of the will, attempting to devise cash and bonds to the appellee, he said: ''Knowing the laws of Mississippi as I do, speaking as an attorney—of course these bonds will go back to the estate and they will go back to the next living relative.'' He was then interrupted by an objection by counsel for the appellee. This objection was sustained ''as to the statement of Mr. Kelly at the time of reading the will.'' Counsel for the appellant then said that it would be shown by this witness that Leona Byrd heard this statement of Kelly and remained silent—making no claim to the bonds. This evidence should have been admitted for its bearing on whether or not the appellee then claimed that the bonds had been given to her by Mrs. Wehmeyer before she died; particularly in view of this allegation in her answer to the appellee's petition: ''That she had not made known heretofore her individual ownership of said bonds because she was of the opinion, and so advised, that all of said bonds and the cash in said lock box were hers under the provisions of the said Last Will and Testament of the said decedent, Lizzie M. Wehmeyer.'' This error might not of itself require a reversal of the decree rendered, for the reason that this witness further testified that the appellee then claimed other papers that were in the box and that Kelly handed them to her, saying: ''Here are

your papers. You will have to take them out of here, because the rest of this is the estate of Mrs. Wehmeyer.''

The appellant offered herself as a witness in her own behalf, but on objection by the appellee was not permitted to testify. Afterwards, she again offered to testify in her own behalf for the purpose of showing ''that Mrs. Wehmeyer made a statement to her as to her property before she died—which is to uphold the estate and not against the estate—.'' It will be observed that this offer does not disclose what the statement made by Mrs. Wehmeyer to the witness, was, or in any way disclosed that it would be relevant or material to the controversy; but as it is clear from the record and the argument of counsel, both for the appellant and the appellee, that the court below refused to permit the witness to testify for the reason that she was incompetent so to do under Section 1529, Code of 1930, and since the decree must be set aside and the cause remanded, we will decide the question of the competency of the witness for the guidance of the court below.

Section 1529, Code of 1930, provides that: ''A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent.''

The issue of fact here being tried was whether or not the bonds in question were a part of the estate left by Mrs. Wehmeyer, or belonged to the appellee by virtue of a gift thereof from Mrs. Wehmeyer during her lifetime. The claim that produced this issue—the only one being asserted against Mrs. Wehmeyer's estate—was the claim of the appellee that the bonds belonged to her, and were not a part of Mrs. Wehmeyer's estate. Evidence negativing this claim, therefore, would not be in support of a claim by anyone against the estate; consequently, if her testimony is limited to facts that negative the appellee's ownership of the bonds and show that

they were a part of Mrs. Wehmeyer's estate, the appellant would not be testifying in support of any claim of hers against Mrs. Wehmeyer's estate, and, therefore, would be competent to so testify. That she is a distributee of this estate and therefore might be benefited by her testimony does not make her an incompetent witness under the statute. Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Sweatman v. Parker, 49 Miss. 19.

It will not be necessary for us to pass on the other rulings of the court on evidence, except to say·that the evidence offered by the appellant as to statements made out of court by the witness Buchanan was incompetent unless a proper predicate therefor had been laid.

One other question remains. After the filing of the appellee's answer to the appellant's amended petition, the appellant applied for and obtained a continuance of the case, which she says was necessitated by the character of the appellee's answer. She requested the court to penalize the appellee for bringing this about by directing her to pay the appellant certain expenses she had incurred in attending the court. This, the court declined to do, and we cannot say that it abused its discretion in so doing.

Reversed and remanded.