## HOUSER *v.* HOUSER

No. 43213 November 23, 1964 168 So. 2d 801

*Paul M. Moore,* Calhoun City; *McCraine & Fox,* West Point, for appellant.

212

*Thomas J. Tubb,* West Point, for appellee.

JONES, J.

G. J. Houser, appellant, filed his bill of complaint against Mrs. Bonnie M. Houser, individually and as administratrix of the estate of her deceased husband, Ben Ellis Houser, appellant's son, seeking the cancellation of a deed dated August 17, 1960, from the appellant to his son.

The bill charged the following grounds for cancellation: That the complainant was mentally incompetent on the date of the deed; that undue influence was exerted on appellant by the defendant, Mrs. Bonnie M. Houser, and her husband, Ben Ellis Houser; inadequacy of consideration, so gross as to shock the conscience of the court, and coupled with the age and health of appellant should require the cancellation of the instrument; that there was a fiduciary relationship existing between the appellant and his deceased son at the time of the execution of the deed, and that thereby the burden of proof shifted to the defendants to negate such undue influence.

An answer was filed denying all the material allegations of the bill of complaint, and after a hearing the chancellor dismissed the bill. We think he was justified in so doing.

At the time of the execution of the deed on August 17, 1960, appellant was eighty-seven years of age. His wife had died in 1953 and shortly thereafter his son and daughter-in-law moved to the home of appellant, where they remained until about 1957. They then returned to their own home, whence Mr. Houser accompanied them, and with the exception hereinafter mentioned, they lived together until the death of Ben Ellis Houser in January, 1962. The reason for the move was there were more conveniences in the home that appellee and her husband constructed, and since she was working, it was necessary that they utilize these conveniences to see after her family.

Sometime in 1954 or the early part of 1955, the son, Ben Ellis Houser, became ill. From about 1950 until the time of his illness, a dairy had been operated on the land of appellant by the son, Ben Ellis Houser, who had surrendered his job with the Highway Department to return and operate the said dairy. It was shown that the dairy was operated on a fifty-fifty basis. When the

son became ill, the partnership was dissolved and the cattle sold.

In January, 1960, the appellant became ill. He went to the hospital for a short while and thereafter to the home of his daughter, Mrs. Grady Martin, where he stayed for several weeks and then returned to the home of his deceased son. There was a dispute as to why he left the home of Mrs. Martin, it being claimed on the one hand that he returned to his son's home because he loved his grandchildren, and to be with them; and on the other hand, it was claimed that the Martins wanted to put him in an old men's home.

There were many witnesses introduced, those for the appellant testifying as to his failing health, and also as to his mental incapacity, although some of them admitted that at times he was all right. They knew nothing about the circumstances surrounding actual execution of the deed.

This testimony was met by witnesses who knew the appellant and testified that his mental condition was good, so there was an issue of fact as to his soundness of mind.

It was shown that the appellant and his deceased son were very close and that the son went with him in the car wherever Mr. Houser wanted to go.

On the day, August 17, 1960, when the deed was executed, the appellant and his son went to the office of Honorable H. B. Abernathy, an attorney. The attorney testified that the son left, after which he, the attorney, conferred with appellant and then prepared the deed. An objection was sustained to any testimony that the attorney might give as to a conversation with appellant on the ground that it was privileged. However, the court, in deciding the case, did consider that the attorney talked to appellant and prepared the deed. The deed was witnessed by four friends of the appellant, to wit:

C. D. Lowery, S. A. Farr, Eddie D. Farr and Dr. Thomas M. Gore.

Mr. S. A. Farr testified that appellant and his son came to the office where Mr. Farr worked; that after Mr. Houser entered the office, the son left and appellant stayed some thirty to forty minutes. During this time Mr. C. D. Lowery appeared and talked with Mr. Houser. Mr. Eddie D. Farr, who witnessed the deed, for some reason did not testify on either side. Mr. Lowery stated that in his opinion Mr. Houser knew what he was doing and that he was mentally competent to sign the deed. Mr. S. A. Farr testified that Mr. Houser's mind would come and go, but that he, the appellant, did tell him, Mr. Farr, what he was going to do with his property. Dr. Thomas M. Gore was introduced and when objection to his testimony was made, the ruling was reserved. Appellant had seen the doctor on the day of the deed for the purpose of letting him ascertain whether he was mentally competent to sign. Dr. Gore testified that he signed the instrument as a witness, but did not have any idea what was in the paper. In his opinion Mr. Houser was mentally competent to sign.

After the instrument was signed, Mr. Houser and his son went to the office of the chancery clerk to acknowledge his signature, and Miss Virginia Baker, a deputy clerk, testified about the conversation that she had with the appellant and the events that occurred in the office of the chancery clerk. She stated that the appellant told her that he wanted his son, Ben Ellis, to have the land because he had been taking care of the appellant; that there was nothing about Mr. Houser that was not normal. There was much other testimony. It was shown that the appellant had given his daughter approximately 100 acres of land prior to this time, he having only the two children. It was shown that when he and his deceased son and his son's family left the house of appellant, the appellant made rental contracts

for the property until he deeded it to his son. It was further shown that a short time before the deed was made, one of Mr. and Mrs. Martin's daughters and her husband were living in the house without paying any rent. Appellant asked them to move and they agreed to do so. Later there was a fight at the home of appellant, in which the son, Ben Ellis Houser, was knocked to the ground by Martin, the brother-in-law, and the appellant himself was also knocked to the ground. The actual reason for the disturbance is not shown by the record, although it can be inferred.

After the execution of the deed, a welfare representative approached appellant about why he had made the deed, and told him it might adversely affect the social security payments he was receiving. Thereupon the welfare worker was advised by the appellant that it was his, appellant's, property and he could do what he wanted to with it.

After the death of the son, Ben Ellis Houser, his wife, the defendant here, Mrs. Bonnie Houser, was appointed executrix of his estate, and his will disclosed that he had devised to his wife the property which his father had deeded to him. Thereafter, this suit was filed on November 1, 1962.

While it is not mentioned in the briefs or in the court's opinion, we are very much impressed with the clarity and steadiness of the signature of the appellant to the deed and to some checks issued by him about the same time, photostatic copies of all of which appear in the record.

■■ ■ The chancellor was amply justified, and certainly we could not hold that he was manifestly wrong, in finding that appellant was mentally sound at the time of the execution of the deed; that there was no undue influence.

■■ ■ However, complaint is made that the court erred in permitting Dr. Thomas Gore to testify. This

assignment, if it were error, which we do not decide, was rendered harmless by the chancellor in his opinion when he said: "If the objection to the testimony of Dr. Gore had been sustained, the court would still hold that G. T. Houser was mentally competent when he executed the deed. In other words, if the testimony of Dr. Gore was rejected, the court would still rule that Mr. Houser was mentally competent and understood what he was doing at the time that he signed the deed."

It is also assigned that the court erred in holding the deed in question was not obtained by the deceased son by over-reaching or undue influence. It was asserted that there was a fiduciary relationship established between the son and his father and that the burden was on the son to show the validity of the deed. The court held there was no such relationship at the time of the execution of the deed, and stated: "If a contrary opinion were reached, it is the opinion of the court that the defendant has rebutted the presumption of fraud and undue influence by showing the facts and circumstances surrounding the execution of the deed, the consideration for the deed and the relationship that existed between the parties. Mr. Houser had given his daughter some land in the same neighborhood many years before and was trying to do as much for his son. His action in executing the deed was made after free consultation with life-long friends and as far as this record is concerned, represented his independent will and action."

It is contended that the court erred in permitting the administratrix of the estate of Ben Ellis Houser (Mrs. Bonnie M. Houser) to testify, she being the sole beneficiary of the last will and testament of Ben Ellis Houser. It is sufficient to say that Mrs. Houser was not undertaking to establish any claim against the estate of a deceased person; to the contrary, she was undertaking to establish the claim of the estate

of which she was the executrix. In Ford v. Byrd, 183 Miss. 846, 184 So. 443 (1938), Mrs. Helen Meyer Ford sued Miss Leona Byrd both individually and as executrix of the will of Mrs. Wehmeyer. The suit involved the ownership of $9,000 in U. S. bonds formerly owned by the deceased and claimed as a gift inter vivos by Miss Leona Byrd. From the decree Mrs. Ford appealed. The case was reversed and remanded. Mrs. Ford was an heir of the estate and offered to testify. Objection to her testimony was sustained. As to this question our Court said: "The issue of fact here being tried was whether or not the bonds in question were a part of the estate left by Mrs. Wehmeyer, or belonged to the appellee by virtue of a gift thereof from Mrs. Wehmeyer during her lifetime. The claim that produced this issue — the only one being asserted against Mrs. Wehmeyer's estate — was the claim of the appellee that the bonds belonged to her, and were not a part of Mrs. Wehmeyer's estate. Evidence negativing this claim, therefore, would not be in support of a claim by anyone against the estate; consequently, if her testimony is limited to facts that negative the appellee's ownership of the bonds and show that they were a part of Mrs. Wehmeyer's estate, the appellant would not be testifying in support of any claim of hers against Mrs. Wehmeyer's estate, and, therefore, would be competent to so testify. That she is a distributee of this estate and therefore might be benefited by her testimony does not make her an incompetent witness under the statute. Cock v. Abernathy, 77 Miss. 872, 28 So. 18; Sweatman v. Parker, 49 Miss. 19." 183 Miss. 858-59, 184 So. 447.

If it be asserted that she should not have been permitted to testify because of the alleged unsound mind of appellant at the time of the deed, we think even this question was decided in Cock, Administrator v. Abernathy, Administrator, 77 Miss. 872, 28 So. 18 (1900). The first syllabus of that case reads: "WITNESSES.

Estate of decedent. Code 1892, § 1740. An administrator, although a distributee of his intestate's estate, is a competent witness to establish a claim of his intestate against the estate of another decedent. He is not incompetent, under Code 1892, § 1740, providing that a person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person, etc."

■■■ Complaint is made that the court erred in taking into consideration the testimony of Honorable H. B. Abernathy, whose testimony had been excluded by the court. In its opinion, the court said "—the testimony of the attorney that he talked to complainant and prepared a deed is considered by the court." We think this statement of the court and the consideration of these facts relative to the attorney was justified under the following colloquy which occurred at the end of Mr. Abernathy's testimony: "BY MR. TUBB: The Defendant proposes to prove by this witness that Ben Ellis Houser and G. J. Houser together came to his office and one or the other then said in the presence of each other and to this attorney that they wanted a deed to the land drawn, whereupon Ben Ellis Houser retired and G. J. Houser consulted the attorney, and as a result of the consultation, a deed was prepared by him deeding . . . or the deed was prepared by him that is Exhibit #1 to the testimony of Mr. C. Doss Lowery. We submit that he hasn't revealed the first words that Jack Houser said to him as his client. That is a public record, that deed.

BY THE COURT: The testimony shows affirmatively everything that you propose to prove without objection. I thought you were going further into the matter.
BY MR. TUBB: That is all I wanted to prove.
BY THE COURT: That he prepared the deed.
BY MR. TUBB: That is all I wanted.
BY MR. McCRAINE: We will admit that."

■■ Complaint is also made that the court erred in holding the consideration for the deed in question sufficient. The deed recited a consideration of $500 cash and the natural love and affection that the grantor had for his son, and also says "and further consideration that the grantee herein has heretofore cared for me and maintained me in his home during the past seven years (with the exception of about one week) since the death of my wife, he having attended me through illness and having expended considerable sums of money and the purchase of medicine and other necessities of life for me." We think there was no error as to this finding.

The other assignments of error are either not argued or are answered by what we have heretofore said.

Affirmed.

*Lee, C. J., Gillespie, Rodgers and Brady, JJ.*, concur.