408 So.2d 1368 (1982)
Mrs. Inez HUFF
v.
Dr. Octavius D. POLK.
No. 53182.
Supreme Court of Mississippi.
January 27, 1982.
Rehearing Denied February 24, 1982.
Banks & Nichols, C.C. Anderson, Jr., Jackson, for appellant.
Snow, Covington, Temple & Watts, W. Arlo Temple, Ready & Prichard, P.A., William E. Ready, Meridian, for appellee.
Before SMITH, P.J., and ROY NOBLE LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This appeal comes from the Circuit Court of Lauderdale County. Appellant Mrs. Inez Huff filed her suit against appellee Dr. Octavius D. Polk alleging that Dr. Polk was guilty of malpractice leading to the death of appellant's husband Dr. J.E. Huff. There was a jury verdict for the defendant (appellee here, Dr. Polk). Appellant assigns only one alleged error; that is:
The court erred in overruling appellant's motion in limine and continuing objection to the testimony of the appellee's expert witnesses.
The facts on the issue presented to this Court are practically undisputed, and we will discuss the record as it pertains to the only issue involved.
The trial of the case in the circuit court started on the morning of February 18, 1981. The alleged error occurred immediately prior to the start of the trial when appellant's attorney filed a motion in limine objecting to the testimony of three doctors whom appellee's attorneys advised would testify for appellee. They were Doctors John Atwood, Joe S. Covington, and John Clay. The first two doctors were named in a written instrument handed appellant's attorney styled "Supplemental Answers to Interrogatories." The possible testimony of Dr. Clay was related to appellant's attorney orally.
On May 5, 1980, appellant's attorney filed interrogatories to be answered by appellee Dr. Polk pursuant to the provisions of Sections 13-1-201-226, Mississippi Code Annotated (Supp. 1980). Interrogatory No. 35 was as follows: "Is there any person that *1369 the defendant expects to call as an expert witness at trial?" Interrogatory No. 36 coincided with the statute regarding discovery involving expert witnesses, as shall hereinafter be discussed.
On July 4, 1980, appellee's attorneys secured five days additional time to file answers to the interrogatories. The answer to Interrogatory No. 35 was "Not determined at this time." The answer to No. 36 was "Not applicable." These answers were filed on August 4, 1980. No further answers or information of any kind regarding these interrogatories and the answers were given appellant's attorney prior to the morning of the trial as hereinbefore related.
On August 29, 1980, appellant's attorney filed a motion for a peremptory setting of the cause for trial. A similar motion was filed by appellee's attorney on September 2, 1980. The lower court then entered an order setting the case for trial on November 3, 1980. On October 28, 1980, an order was entered by the lower court resetting the case for trial on February 2, 1981. On January 27, 1981, appellee's attorney filed a motion for a continuance due to medical disability of appellee. The court then entered another order setting the case for trial on February 18, 1981.
As heretofore stated, shortly before the trial began on February 18, 1981, one of appellee's attorneys handed appellant's attorney the supplemental answers to interrogatories listing two doctors that would be called as experts and orally advised that another might be called. Appellant's attorney promptly dictated into the record his motion to exclude the testimony of the proposed expert witnesses as their names were not divulged to him until the day of the trial and he had no chance to prepare as far as they were concerned.
One of the appellee's attorneys gave as one reason in his argument that no harm was done appellant, as appellant's attorney could not communicate with the experts; this being prohibited by the privileged communications statute [Section 13-1-21, Miss. Code 1972 Ann.]. A disposition of this contention may readily be made by examining the statute which clearly makes privileged only communications made to a physician or surgeon by a patient. There is no contention in the case sub judice that the alleged experts to be called ever treated appellant's deceased husband. Appellant's attorney therefore had a clear right, if not a duty, to further investigate the proposed experts after that information was divulged to him. Furthermore, it was revealed that appellee had talked with appellant's expert days before the trial date.
We need next to look at the discovery statutes in question, which statutes were passed by the Mississippi Legislature in 1975 and went into effect on January 1, 1976. [The quoted parts have been made a part of the "New Rules" under Rule 26 adopted by a majority of the Court to be effective as of January 1, 1982. The writer of this opinion dissented to their adoption, and still does. It falls my duty to write this opinion.] The language of the statutes are clear as to their requirements. Section 13-1-226(b)(4) titled "Trial Preparation: Experts" states:
Discovery of facts known and opinions held by experts, otherwise discoverable under subsection (b)(1) of this section, and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subsection (b)(4)(C) of this section, concerning fees and expenses as the court may deem appropriate.
*1370 As we heretofore have seen, appellant's attorney, in filing his interrogatories many months prior to trial, strictly followed the provisions of the above legislative mandate.
Subsection (e) of the discovery statute in question under the title "Supplementation of Responses" provides:
A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
As we heretofore have seen, the original answer to the interrogatory under the above discovery statutes merely stated: "Not determined at this time." No supplement or other information regarding experts was given appellant's attorney until immediately prior to the start of the trial.
The lower court, in an attempt to expedite the questions before him, first stated that he would permit appellee to introduce one of the doctors and only ask him a hypothetical question. The court was then informed by one of the appellee's attorneys that it was their intention for the experts to testify further than merely being asked hypothetical questions. The lower court then stated that it would grant appellant [plaintiff below] a continuance to further prepare his case. This attorney advised the court that his medical expert whose name previously had been given appellee's attorney was then on his way from Jackson to Meridian and expenses had been incurred. He relied on his assumption that under prior legal authority the court would be in error if it permitted appellee's experts to testify. Appellant's attorney and his main expert witness, with all the expenses involved, were either in Meridian or on their way. The case had been peremptorily set for some time, and appellant's attorney insisted on the lower court giving him the legal rights to which he thought he was entitled and therefore turned down the court's offer for a continuance.
The court thereafter changed its mind about allowing only one of the appellee's experts to testify and then only in answer to a hypothetical question. He allowed both Drs. Covington and Atwood to testify and their testimony consumes 110 pages of the record. It should be pointed out that the primary reason given the court by appellee's attorneys for the failure to conform to Section 13-1-226(e) was that they had done the preparation for trial the night before, even though they were to begin the trial early the next morning under which their client was being sued for 1.5 million dollars.
This Court had before it a similar, if not identical question, in the case of Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979). There the situation was the same except the parties were switched. On the morning of the trial, plaintiff's attorney had not divulged in writing the name and further statutorily required information pertaining to experts in answer to defendant's interrogatories. He had filed a similar answer as that made by appellee here. On the morning of the trial in Clark, supra, plaintiff's attorney stated that he would use a certain expert witness at trial. The defendant's attorney stated he would object *1371 thereto as the plaintiff did not follow the hereinabove set out statutes by not filing supplemental responses to the interrogatories in sufficient time for the opponent to be prepared regarding that expert. In Clark, on the second day of the trial, the expert was presented as a witness and on objection the court ruled he could not testify due to the failure of appellant to conform to the discovery statutes. On appeal by plaintiff, after an adverse jury verdict, we held that the lower court was correct in refusing to permit the testimony of the expert witness and stated:
In the present case the record shows that about six weeks prior to the trial date, during a conversation between attorneys for appellant and appellee, the attorney for appellant advised the name and address of the expert in question who would testify at the trial. The question now is whether or not, taking all the foregoing occurrences and pleadings into consideration, this Court can say that the trial court abused its discretion. There are two paramount considerations that in our opinion make this decision. In the first place, appellant gave no answer to any of the three interrogatories in question except to say that he was unable to answer each at that time but would file supplemental answers at a later date. This was not done. In addition to this, as before stated, on March 24, 1978, approximately three months after the original answers were filed, appellee filed a demand for its answers. These were not given. (372 So.2d at 1080).
In the present case, appellant's attorney had no information whatever either written or oral regarding appellee's experts until the morning of the trial. In Clark, as seen above, it was undisputed that six weeks prior to the trial, the plaintiff's attorney had told the defendant's attorney orally about the expert that was to be used.
The Legislature in enacting the discovery statutes involved in this appeal had a purpose in so doing. Court cases should not be tried in an atmosphere of secrecy or intentional undue influence. As has been said by both the Legislature and this Court, the rules of Court are supposed to be for the purpose of promoting justice and fair play. If a member of the bar intends to try cases in court, he is presumed to know the rules. The statutes hereinabove quoted are clear, concise, plain and could not possibly be misinterpreted. If rules are going to be promulgated, they cannot apply to different cases in a different manner. As has been commonly stated, "What is good for the goose is good for the gander." A practicing attorney cannot strongly advocate applying one rule and contend that some other rule should not be enforced in the same manner.
Appellee contends that the noncompliance of the statute in question was cured when the lower court offered appellant a continuance. First, we have seen that appellant already had incurred the expense of preparation for trial, including the payment to a medical expert who was on his way from Jackson to Meridian. We can almost take judicial knowledge that this would be rather expensive.
The main point, however, is that under the lower court's ruling in this case, in justifying his actions by offering a continuance, the court is setting up a situation where either party to a cause in litigation may decide that he will not be ready for trial on the day it is set and wishes a delay. He could get one by not conforming to the above quoted discovery rules until the morning of the trial, knowing that he would get a continuance by the court giving the already prepared opposition a continuance. We certainly cannot condone the possibility of a situation such as that being legalized.
In summary, the rules of court procedure have been promulgated. As stated above, the particular discovery procedure in this appeal was first adopted by the legislature. The quoted parts were carried over (with additions) into the new rules. We recognize that some members of the bar are going to be unhappy when forced to conform. Regardless *1372 of this, we have no choice but to reiterate that attorneys are required to conform to the rules of procedure, regardless of how obnoxious or penal some are thought to be.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and SUGG, P.JJ., and WALKER, BROOM, ROY NOBLE LEE, HAWKINS and DAN M. LEE, JJ., concur.