HAWKINS, Justice,
dissenting:
I respectfully dissent.
In my view the circuit judge had authority to impose reasonable and proper expenses as a condition for continuing the case.
To spare the reader the necessity of going back and forth between two opinions, I will relate the facts of this case as I perceive them, although the majority and I are in essential agreement as to what occurred.
FACTS
On February 23, 1981, Nancy Owens filed a declaration for malpractice against R.H. Franks, M.D., Earl E. Whitwell, M.D., Ben H. Buchanan, M.D., and F. Mitchell Massey, M.D., doing business as Tupelo Orthopedic Clinic, the North Mississippi Medical Center (Medical Center), and the Upjohn Company (Upjohn), a pharmaceutical corporation, for treatment received as a patient in the Medical Center from April 3-April 21, 1979. Franks was her treating physician. The gist of the charge was that Franks, an orthopedist, in the course of performing a laminectomy, nicked the covering to her spinal canal, which he packed with Gelfoam, a product of Upjohn, and this was not a proper medication. After surgery Franks left town for several days. Franks being absent, Whitwell, Buchanan and Massey were called in to treat Mrs. Owens. She developed serious and permanent complications. Her husband Jessie joined in the suit, for loss of consortium.
Counsel for the plaintiffs wrote Richard C. Gardner, M.D., an orthopedist of Fort Myers, Florida, for an opinion, enclosing a copy of Mrs. Owens’s medical records. On August 27, 1980, he replied asserting there was malpractice in that the surgery was probably unnecessary to begin with, the surgical technique was improper, the medication was improper, and her post-operative care was improper. He also stated serious, irreversible medical problems would develop within twelve hours after the first symptoms of complications.
The plaintiffs reached a compromise settlement with Franks for $150,000, and an order of dismissal as to him was entered November 16, 1981. The case was dismissed as to the Medical Center on February 11, 1982, and as to Massey on March 5, 1982.
Numerous interrogatories were propounded by various defendants. Whit-well’s interrogatory Number 25 to plaintiffs asked the conventional question as to the experts they planned to call at trial, their qualifications,. and the substance of their opinions to which they were expected to testify. The answers to Whitwell’s interrogatories were filed June 16, 1981. Number 25’s answer was “Undetermined at this time.” Whitwell’s interrogatory 24 had asked plaintiffs to give the names, addresses and qualifications of each expert with whom they had consulted in preparation of their lawsuit. Gardner was named as one of these.
On April 28, 1981, Upjohn’s interrogatories were filed. Number 28 asked the name and address of each expert witness by whom they expected to establish that Gelfoam caused Mrs. Owens’s injuries. Plaintiffs, named Gardner. Number 35 also asked that a copy of any report by such expert be attached to the answer. Plaintiffs attached Gardner’s letter of August 27, 1980, in answer to this interrogatory.
An agreed order was entered September 7, 1982, setting the cause for trial Monday, November 29.
On November 17, 1982, this Court decided King v. Murphy, 424 So.2d 547 (Miss.1982).
On November 18 plaintiffs supplemented their answers to Upjohn’s interrogatories, supplementing Number 9 by adding the names of additional treating physicians. Number 28 was supplemented by adding the name of Dr. Thomas J. Vecchio, in the employ of Upjohn, and also Franks and Dr. Thomas J. McDonald of Tupelo.
On November 19 plaintiffs again supplemented their answers to all remaining defendants’ interrogatories by a general *1079 statement that the experts they intended to call also included David Horn, a vocational rehabilitation specialist of Houston, Mississippi; Dr. Paul T. Oliver, an economics professor at the University of Mississippi; and Dr. Robert J. Barnett, an orthopedist of Jackson, Tennessee. As to Dr. Barnett, the answer stated:
... Dr. Barnett is a board certified orthopedic specialist, and is currently practicing his specialist [sic] in Jackson, Tennessee. He is a graduate of the University of Mississippi and is familiar with the standards of care and treatment in the orthopedic field in the State of Mississippi. If he testifies, he will testify in this speciality in Mississippi and its surrounding areas.
[Vol. I, p. 216]
On Monday, November 22, the defendants Whitwell and Buchanan filed a motion in limine to exclude the testimony of Gardner, he being the same person who had testified for the plaintiff in King v. Murphy, and also to exclude Horn, Oliver and Barnett because of plaintiffs’ failure to comply with the discovery statute. One of the stated reasons for making an objection before trial was to avoid having to object when these individuals were offered as witnesses, and thereby necessitating a mistrial.
On Wednesday, November 24, an order was entered dismissing the cause as to Upjohn. On the same day plaintiffs filed another supplement to their answers to the interrogatories from Whitwell by supplementing to Number 25 the names of Franks and a Dr. William Gary. They did not state the substance of either of these physicians’ testimony.
In this state of affairs, approximately six days prior to the November 29 trial, defense counsel contacted the circuit judge as to their motion, who recommended a pretrial determination be made as to whether the case should be continued. When defense counsel contacted plaintiffs’ local counsel, he informed him that he would be unavailable for any pretrial hearing, but would proceed to call Gardner as a witness. The circuit judge’s opinion states the following as to these developments:
Approximately six days prior to the trial date of this cause, counsel for the Defendants notified the Court by phone that the same Dr. Richard Gardner of Fort Myers, Florida, is the only expert’s name furnished by the Plaintiffs who would testify relative to “standard of care”, and if Dr. Gardner is now not qualified to testify, in order to save all parties, counsel, witnesses and the Court the time and expense of intensive trial preparation over the upcoming several days, including Thanksgiving Day, a determination should be made by the Court immediately whether the case should be continued. The court agreed with defense counsel and requested defense counsel notify plaintiffs’ counsel about an immediate hearing on the question. Defense counsel later advised the Court that plaintiffs’ counsel advised defense counsel that he would be unavailable for such a hearing until the day of trial, and that he planned on calling Dr. Richard Gardner to testify. With that response from Plaintiffs’ counsel, defense counsel, their surgeon clients and their surgeon witnesses continued intense preparations for the scheduled trial, defense counsel advising the Court that they even worked some on Thanksgiving Day and all of the week-end following Thanksgiving. The surgeon defendants and surgeon expert witnesses blocked out their medical practice schedules for the scheduled week of trial. The Court had been advised by both sides that the trial would last approximately one week. The Court let stand its order summonsing a large jury venire to be impanneled for this one case that was scheduled for the upcoming week. [Emphasis added]
Vol. II, pp. 350-351.
On Monday, November 29, the defendants Whitwell and Buchanan amended their motion in limine by also objecting to Franks and Gary testifying.
*1080 The ease came on for trial at 9:00 o’clock that morning. At the beginning of the proceedings, defense counsel asked to be heard on his motion in limine. He asserted that the King v. Murphy decision as ground for objecting to Gardner testifying. He also objected to the remaining expert witnesses, as well as Gardner, testifying -because the discovery statutes had not been complied with.
The plaintiffs were represented by two attorneys. Their Tennessee counsel, Jeff Gerrity, argued that King v. Murphy would not necessarily exclude Gardner from testifying. Local counsel, however, who was the same counsel who represented the plaintiff in King v. Murphy, conceded Gardner would not be competent to testify on the local standard of care under the King decision. He argued Gardner should be permitted to testify for the limited purpose of “causation.” He went on to state a petition for rehearing had been filed and he was confident this Court would “clarify” King.
The circuit judge then ruled that under his interpretation of King v. Murphy, Gardner would be incompetent to testify. No ruling was made on the remaining prospective expert witnesses of plaintiffs at that time. The court excused the jury until the afternoon.
The circuit judge then recited into the record that while court was in recess waiting for the jury list to be typed, plaintiffs’ counsel had asked for a continuance. He then permitted counsel to make the motion of record. Plaintiffs then orally moved for a continuance.
Defendants objected to the continuance, citing our decision in Huff v. Polk, 408 So.2d 1368 (Miss.1982), and Square D. v. Edwards, 419 So.2d 1327 (Miss.1982).
Apparently, when the off-the-record motion for a continuance was made, defendants objected, and during the colloquy between the court and counsel, the circuit judge indicated he might consider granting a continuance if plaintiffs’ counsel would pay the defendants their expenses occasioned by preparing for an aborted trial. And, at the court’s request for some estimate of such expenses, defense counsel in the off-the-record discussion gave a figure of $36,000.
Plaintiff’s counsel concluded his ore ten-us motion for a continuance in the record by noting they were prepared to go forward with the case, but reserving their right to appeal on the court’s ruling as to the continuance.
Defendants on record contested granting any continuance, and informed the court the expenses listed were only an estimate.
Following this protracted argument, the circuit judge pointed out that this Court’s decision in King v. Murphy, decided two weeks previously, would have been grounds to continue the case, and a continuance would have been granted on request. That however, plaintiffs counsel had stated they were ready for trial, King v. Murphy notwithstanding. The court stated:
... Undoubtedly, counsel for the plaintiffs could have gotten this case continued had the motion been made prior to today.
However, with the considerable expense that has been incurred by all parties and the Court in coming to the position that we are at this moment, the Court’s of the opinion that a continuance should not be allowed at at this time, unless counsel for the plaintiffs pay a reasonable amount to the defendants for the expenses which they have incurred and also a reasonable amount to the county for the expense that the county has incurred in organizing this Court today and bringing a large jury panel to try this case. And in the opinion of this Court, that reasonable amount would be twenty thousand dollars. If counsel for the plaintiffs are willing to pay those expenses, the Court will be inclined to grant the continuance until a later term of court.
If Counsel for the plaintiffs are not willing to pay those expenses, then the Court feels that the working expense that has been incurred in getting the *1081 case to trial today is enough to justify going on and using those efforts in trying the case. [Emphasis added]
Vol. II, pp. 271-272.
Plaintiffs’ counsel did not accept the court’s offer, and the case proceeded to trial. One witness testified, and court recessed for the day.
On the following morning, plaintiff’s counsel orally moved to amend the answer to interrogatory Number 25, giving Frank’s professional qualifications, and reciting the substance of his testimony; and also what Dr. Barnett would testify. Defendants objected to this late supplemental answer, and asked the court to rule.
The court ruled that it was too late to supplement answers to interrogatories on the second day of trial, citing our Huff and Square D. decisions.
Plaintiff’s Tennessee counsel then moved the court to permit an interlocutory appeal from his ruling not to permit the supplemental answer. This was denied.
Local counsel for the plaintiffs then moved for a continuance, stating:
Now comes the plaintiff and moves the Court to grant a continuance of this case to a succeeding term of Court, preferably the next term of Court, if that’s possible, conditioned upon the Court’s previous ruling that the cost of both the organizing the Court and the cost to the defendants must be met.
Under the unusual circumstances of this case, while the Court laid down its edict in regard to a continuance, we were not aware that this circumstance would arise. It has arisen, and we therefore say to the Court that we are prepared to pay the reasonable costs to the defendants of being here any inconvenience, and, of course, the cost of organizing this Court as set out by the Court in its opinion on the motion for continuance made yesterday. [Emphasis added]
Vol. II, pp. 302-303.
Defense counsel strongly objected to any continuance, observing at one point:
... Now, we believe that the plaintiff’s options are clear at this point: that the plaintiff may decide to rest at this point and the Court can give a final ruling and directed verdict, and the case would be in a perfect attitude and position for appeal; and all of the issues that have been decided would then be in a correct posture for an appeal at that point; and all of these things would then be raised.
Vol. II, p. 304
Plaintiffs counsel concluded his response to the defense with the following statement:
... We think the ends of justice would be served by going ahead as the Court pointed out yesterday, let us pay the costs, whatever costs are attendant, with the abortion — that’s what this is, an abortion of a trial. It hasn’t been a trial; the trial has not begun.[1]
The record then reveals the following statement by the circuit judge and response of plaintiffs’ counsel.
I would like the case, as in all eases, to be decided on the merits of the case, be those merits favorable to whichever side.
The motion for a continuance will be granted on the condition that the plaintiffs pay to the defendants the amount of $20,000 to compensate them for the costs that have been incurred in the preparation of this trial being here, plus $1,000 to the county for the costs of organizing this Court and being here yesterday and today. The defendants wil [sic] have fifteen days to pay the costs; and under that condition having been met, the case will be put back on the calendar for some setting at a later date.
MR. LAWSON:
Thank you, Your Honor.
Vol. II, pp. 306-307.
The trial was stopped and the jury discharged.
Two dayo later, plaintiffs’ counsel made a lengthy motion for the circuit judge to reconsider his ruling. The thrust of his *1082 objection was not directed to the court requiring him to pay expenses, but that $20,-000 was much too high. He was perfectly willing to pay the court costs of $1,000.
On December 9, the court entered an order on this motion; first ruling that plaintiffs should pay the defendants trial preparation expenses. The order further stated there was nothing in the record other than a general estimate of $20,000 expenses, and “The court does not wish to impose an amount in an arbitrary or capricious manner.”
The order stated:
In view of the above, the defense counsel should furnish to the Court, within 10 days hereof, affidavits of the amount of time and expense expended by the counsel, defendants, and medical expert witnesses from November 24, 1982, the day defense counsel called the Court and asked that an immediate ruling be made on whether trial preparation should continue, through November 30, 1982, the date plaintiffs announced they had no medical witnessed allowed to testify and wished a continuance, which time and expenses will require duplication in preparation of the next trial; also the time and amounts lost by counsel and defendants by blocking out the week of November 29, 1982, in their respective professional practices in anticipation of the trial of this ease, which time and amounts were not recovered by returning to their respective legal and medical practices during the week.
Vol. II, p. 352.
Defendants complied with the court’s order, and upon filing the court ordered affidavits, on December 29 also moved the court not to permit inspection of the affidavits by any person, including opposing counsel, without court order. The reason for this motion was to prevent pretrial publicity on this information. Attached to the motion were copies of newspaper articles showing the publicity attending the trial.
On February 2, 1983, the court entered an order reciting that plaintiffs’ counsel had paid all sums required and concluding that the expense affidavits would not be examined without a court order authorizing it.
The case was tried at the next term, resulting in a verdict and judgment for the defendants.
In the motion for a new trial, one of the grounds assigned was error by the court in not permitting Gardner, Barnett and Franks to testify. Counsel also assigned the following grounds:
10. The Court further erred in requiring the Plaintiffs to pay the sum of $21,-544.00 to the defendants Whitwell and Buchanan and three of their attorneys, names Upchurch, Wicker, and Hillen, as a condition of being granted a continuance.
11. The Court further erred in refusing to allow Plaintiff’s Counsel in inquire into the accuracy of the defendants and defendants’ attorneys statements of charges and expenses upon which the assessment of $21,544.00 was made against Plaintiffs as a condition of being allowed to stay in Court.
Vol. II, p. 408
It is significant, at least to me, that even in the motion for a new trial counsel did not argue he should have been required to pay defendants or their counsel any amount, but rather should not have been required to pay $21,544.00.
WHAT THIS CASE IS NOT
This case is not about costs, sanctions or penalties. Although the terms have been loosely used, they are obstacles to analysis.
It is not a case of refusal to grant a continuance to which a movant is entitled, unless the movant meets certain court imposed conditions.
WHAT IT IS
It is a ease of granting a continuance to a movant manifestly not entitled to one, upon the attorney’s compliance with court imposed conditions.
*1083 Indeed, even the last statement is imprecise. This ease is not simply granting a continuance. This is really a case of a trial judge declaring a mistrial and dismissing the jury to accommodate an attorney who has made a mistake, and giving the attorney and his clients another trial, provided the attorney meets certain conditions.[2]
WHERE WE PART COMPANY
The majority holds the circuit judge had no authority to require payment of any expenses caused the opposition because of the mistrial and continuing the case.
In deference, I think the circuit judge had such authority.
DISCUSSION
Let us place ourselves in the position of the litigants, their attorneys, and the circuit judge in November, 1982, in the Lee County circuit court.
When King v. Murphy, was decided, the attorneys for plaintiffs obviously knew Gardner would not be a competent witness under the decision. They had available two choices: (1) endeavor to make Gardner a competent witness by seeing that he did have knowledge of local standards, in compliance with King v. Murphy, or (2) ask the court for a continuance in order to be ready at the next term.
They did neither. Indeed, local counsel even declined the opportunity afforded him by opposing counsel and the circuit judge to determine prior to trial if Gardner was incompetent, and thereby have the case continued. He said he would be ready for trial.
On the first day of trial the circuit judge ruled that Gardner was not a competent witness under King v. Murphy.
On the second day of trial the circuit judge ruled that Barnett’s and Frank’s testimony would be excluded because of discovery violation.
I am of the view that the circuit judge was correct. Not only was Gardner incompetent as a witness under King v. Murphy; in the posture in which he was presented as a witness, but for discovery violation as well. Likewise, and for even stronger reasons the other experts’ proposed testimony was subject to objection for failure to comply with the discovery statutes. These observations seem obvious to me under King v. Murphy; and Huff v. Polk, 408 So.2d 1368 (Miss.1982), interpreting Miss.Code Ann. (1972) §§ 13-l-226(a); 13-1-226(4)(A)(i); 13-l-226(e)(l); 13-1-237(2)(B); and 13 — 1—237(d); and Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss.1979). And, as Huff v. Polk makes abundantly clear, p. 1371, the plaintiffs were not remotely entitled to a continuance.[3]
The predicament to plaintiffs could and should have been avoided by their counsel. The entire blame therefor lies solely with the two attorneys representing plaintiffs. Defense counsel was completely blameless.
It is well to bear in mind there are two applications for a continuance. On the first day the application was denied, and apparently it was the circuit judge who mentioned he would consider continuing the case on payment of costs and expense to the opposition. The plaintiffs declined *1084 the offer, and proceeded to trial after noting their objection to the court’s ruling.
On the second day when the court ruled on the remaining experts, plaintiffs’ counsel again moved for a continuance and offered to pay the expenses necessitated the opposition thereby.
Now, when the circuit judge ruled on the proffered evidence, and refused to unconditionally grant a continuance, who had choices, and who had none?
Plaintiff’s counsel had two choices: proceed with the case and appeal on the court’s ruling, or take a nonsuit.[4]
The defense had no choice whatever. They objected to a continuance. While it is abundantly clear the circuit judge would have abused his discretion in unconditionally declaring a mistrial and continuing the case (indeed he may have abused his discretion in granting a continuance under any circumstances), it is also clear it would have been an error of dubious benefit to the defendants on any appeal. How could they have claimed prejudice by the case being continued to a subsequent term?
What is a circuit judge supposed to do under these circumstances?
If he follows the law, there is a plaintiff terribly injured who has been deprived of her day in court, all because of her attorneys’ mistake.
Standing before him are two discombobulated attorneys for the plaintiffs, their trousers no longer suspended at their respective waists, but resting gently upon four feet and a Lee County courtroom floor, and who can attribute their dire strait to no other persons but themselves. There is such a thing as malpractice against attorneys, too.
If the circuit judge simply denied the continuance, out the door the case would have gone.
Perhaps the circuit judge abused his discretion in granting a continuance in any event, under any conditions. Yet, he tried to spare these unfortunate litigants and their attorneys the fate of never having a trial.
I cannot find fault in the circuit judge’s exercising some humanity in this extreme case, and granting a continuance conditioned upon the payment of incurred court costs and expenses to the opposition.
Neither did plaintiffs’ local counsel find fault to begin with. His first response was to thank the court for its ruling.
Two days later, the trial over and no way to put the parties back in the position they were when the court ruled, counsel filed a motion to reconsider the amount.
Did the circuit judge have any authority to require payment of expenses?
In Ford v. Byrd, 183 Miss. 846, 184 So. 443 (1938), this Court was presented with the reverse side of this question. An appellant argued that the chancellor erred in not requiring the opposing party to pay her expenses in attending a hearing in which she had to seek and was granted a continuance because of the other party’s pleading. We stated that we could not say the chancellor abused his discretion in declining to do so. We did not say he had no authority to do so.
17 C.J.S. Continuance, § 104, p. 486, states:
§ 104. Conditions on Granting.
A court has power to impose reasonable terms as a condition to granting continuance. [Headnote]
Independently of statutory authority, a court having a discretionary power to grant or refuse a continuance on the request of a party generally has power to impose reasonable terms as a condition of granting it.
Time for imposing conditions. Any condition attached to the granting of a motion for a continuance, to be valid and binding, must be made by the trial justice *1085 at the time the motion for such a continuance is granted ...
§ 105. —Payment of Costs.
* * * 4s * *
Expenditures included in costs. In some jurisdictions it is held that the word “costs” has a legal significance, and includes only those expenditures which are by statute taxable, and to be included in the judgment. In others the court is not limited to requiring the payment of the taxable costs but may exercise a reasonable discretion for the purpose of compensating the opposite party for the expenses incurred in preparing for the trial. [Emphasis added]
In my view the rule above underscored is the rule this Court can and should announce for a case such as this.
Section 106 of the same authority also significantly states:
§ 106. —Effect of Conditions and Compliance or Noncompliance Therewith.
Where a party accepts the conditions on which a continuance is granted they become binding, and he cannot afterward complain that the court exceeded its power. [Headnote]
Where a party accepts the conditions on which a continuance is granted, which he may do by accepting the continuance ... he cannot afterward complain that the court exceeded its power. Thus he cannot attack the validity of the order requiring him to pay costs on the ground that ... some of the costs imposed as a condition of the continuance are improper.
When the circuit judge announced the conditions of which he would grant a continuance, plaintiffs’ counsel had a choice: accept it or decline it and proceed with the trial. The time to make the decision was right then.
Indeed, in this case it was plaintiffs’ counsel who told the court they wanted to accept the court’s conditions of the previous day for granting a continuance, and asked the court to grant it.[5] The circuit judge then granted the continuance predicated on the payment of costs and $20,000 expenses to the other side.
Plaintiff’s counsel offered no objection, but thanked the court.
The jury was dismissed, the trial was over.
It seems to me it was rather late to first object two days later, and to pay “under protest” several weeks later.
Although it can be cogently argued plaintiff’s counsel’s acceptance of the conditions of the court estops him from complaining, it is my view the circuit judge erred in requiring payment of a certain amount to the opposing parties and their counsel as expenses without first giving plaintiff’s counsel an opportunity to inspect the charges, and if requested, an adversarial hearing on the matter. It would have been preferable for the court to have required the plaintiffs’ counsel to deposit the sum of money with the clerk to be held until the conclusion of trial, and at that time afford counsel an opportunity to inspect all charges, and have an adversarial hearing on the reasonable and proper allowable expenses.[6]
Under the majority the plaintiffs’ counsel suffer not at all from their own near calamitous mistake, but rather it is the blameless defendants, who must pay for the unnecessary expense occasioned by an aborted trial.[7] To me this is unfair, and a rule which *1086 may work future hardship on attorneys who find themselves in the position of plaintiffs’ counsel.
I know if I stood before a circuit judge on the verge of having my client’s case dismissed for an error I had made, I would be grateful to have the court continue the case upon my paying the reasonable expenses that my mistake had caused the other side, rather than lose the case.
In the future a humane circuit judge will be denied this one last chance to spare a party from having his case thrown out; he will simply, as he is under oath to do, follow the law denying the continuance. The trial judge will not be at liberty to do anything more.
ROBERTSON, J., joins this opinion.

. Counsel erred when he said the trial had not begun.

. Had this been a criminal case, and the district attorney necessitated a mistrial under the same circumstances, it would have constituted double jeopardy to have attempted to try the defendant at some subsequent term. See: Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Crist v. Betz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1977); Jones v. State, 398 So.2d 1312 (Miss.1981).

. While I am of the view the circuit judge was on dead center in his interpretation of the law, counsel for plaintiffs are in no better position if we concede, for purpose of argument, that the judge may have been in error in his ruling. If a trial judge makes an erroneous ruling on evidence, in every case I ever heard of, the trial proceeds and reversal is sought on the erroneous ruling, not stop the ball game and start all over at a later date. It would appear counsel for plaintiffs thought the circuit judge was correct, also, for it is doubtful he would ever have paid $20,000 out of his own pocket to get a case continued when there has been an erroneous ruling. It appears he paid it because he thought the circuit judge was right, and this was the only way in which he could salvage his case.

. The nonsuit may not have been a viable option. The statute of limitations may have run, Miss.Code Ann. (1972) § 15-1-36. See also, however, Miss.Code Ann. (1972) § 15-1-69. King v. Murphy may have put this case under the latter section.

. If anyone should assert that a cocked pistol was at the head of counsel when he made this offer to the court, it should also be asked who crammed the pistol into the judge's hand.

. In all likelihood the circuit judge would have followed a procedure such as this if the plaintiff’s counsel had ever requested him to do so. I concur with the majority that there is a serious question on the amount of the expenses, since the amount (except by unilateral affidavits) has never been passed upon at trial level, I think a trial judge should first have an opportunity to assess actual damages, or expenses, following an adversarial hearing.

. One of the prices we pay for a free society is the risk of being sued by any person at any time in our state courts, and no matter how frivolous the case, a successful defendant is not entitled *1086 to recoup his attorney or out-of-pocket trial expenses from the plaintiff or his attorney. No defendant should be required to pay such expenses twice, however, when the second time around was caused by a blunder of the plaintiffs counsel.